IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

PUTNAM V. SCHERBRING

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

MARK A. PUTNAM, APPELLANT,

V.

KERI G. SCHERBRING ET AL., APPELLEES.

Filed January 17, 2017.   No. A-15-610.

Appeal from the District Court for Douglas County: THOMAS A. OTEPKA, Judge. Affirmed in part, and in part reversed and remanded for a new trial.

Herbert J. Friedman, of Friedman Law Offices, P.C., L.L.O., and Paul E. Galter, of Butler, Galter & O'Brien, for appellant.

Mark C. Laughlin and Jacqueline M. DeLuca, of Fraser Stryker, P.C., L.L.O., for appellees.

INBODY, RIEDMANN, and BISHOP, Judges.

BISHOP, Judge.

Mark A. Putnam filed a negligence claim against Keri G. Scherbring, Dale J. Scherbring, and Janet Scherbring, alleging he was injured in a collision between the vehicle he was driving and a vehicle driven by Keri but owned by her parents, Dale and Janet. The Scherbrings admitted that Keri's negligence caused the collision but denied that the collision proximately caused Putnam's injuries, which allegedly resulted in over $100,000 in medical bills. Prior to trial, the district court for Douglas County granted the Scherbrings' motion in limine to exclude from evidence all but a small fraction of Putnam's medical bills, as well as testimony from one of Putnam's expert witnesses that the medical bills were reasonable and necessary. At trial, Putnam presented evidence of the nature and extent of his injuries and medical treatment but, due to the court's ruling on the motion in limine, presented no evidence of his medical bills. A jury returned a verdict in favor of the Scherbrings, and Putnam appeals.

- 1 -

After reviewing the circumstances of this case in light of the relevant factors, we conclude that the district court abused its discretion in excluding, as a discovery sanction, nearly all of Putnam's medical bills, as well as testimony from Putnam's expert witness that the bills were reasonable and necessary. Therefore, we reverse the judgment in favor of the Scherbrings and remand for a new trial. However, we affirm the court's decisions excluding testimony from one of Putnam's former coworkers and denying Putnam's motion for a directed verdict.

## FACTUAL BACKGROUND

On the morning of December 17, 2008, Putnam was driving his 2007 Honda Civic northbound on 72nd Street in Omaha, Nebraska. At the intersection with Jones Street, Putnam waited for the left turn arrow on the traffic signal to turn green before turning left. At the moment Putnam turned left toward Jones Street, Keri was driving a 2002 Chrysler Sebring southbound on 72nd Street, holding a cup of coffee. She did not see Putnam's vehicle until just before the collision. Although Keri applied her vehicle's brakes, the road conditions were icy, and she did not slow down. Her vehicle collided with the passenger side of Putnam's vehicle at between 35 and 40 m.p.h. Putnam's vehicle spun around in the intersection, and the passenger-side airbags deployed. Putnam reported that his head felt "like a pinball" bouncing around in the car. The force of the collision broke the passenger seat from its anchors. Immediately following the collision, Putnam complained of pain in his head, neck, shoulders, and upper and lower back.

The collision occurred at the same intersection as Putnam's place of employment, and some of Putnam's coworkers came outside after hearing the accident. After police arrived and took statements from the drivers, a coworker drove Putnam to the emergency room, where he was given pain medication and muscle relaxers and was then released. The accident occurred on a Wednesday, and the following Monday, Putnam saw his primary care physician, Thomas Vinton, M.D., who prescribed additional pain medication and referred Putnam to physical therapy. Between December 23, 2008, and April 15, 2010, Putnam attended approximately 77 physical therapy sessions at two locations. According to Putnam, the sessions did not result in any significant pain relief.

After Putnam concluded physical therapy, Dr. Vinton referred him to Bruce Godfrey, D.C., a licensed chiropractor. Between August and November 2010, Putnam attended 27 sessions with Dr. Godfrey, undergoing chiropractic adjustments and other therapies. Once it seemed that Putnam was not progressing, Dr. Godfrey referred him to a pain management center.

At the pain management center, Putnam was seen by H.B. Ghosh, M.D., and John Sanford, a certified registered nurse anesthetist. Putnam's first pain management treatment was in November 2010, and the treatments continued as of the date of trial in June 2015. Each treatment consisted of a series of pain blocking injections to various areas, including Putnam's head, neck, shoulders, and/or lower back. Putnam reported that the injections reduced, but did not eliminate, his headaches and neck and back pain. At first, the relief resulting from each treatment lasted six months, but as of the date of trial, it lasted only six weeks.

In addition to undergoing physical therapy, chiropractic treatments, and pain management, Putnam saw Nicole Liebentritt, M.D., a neurologist, on approximately seven occasions between January 2009 and August 2013 for treatment of migraine headaches following the car accident. In

- 2 -

the years following the car accident, Putnam also was prescribed a variety of medications, including medications for migraines, muscle relaxers, antidepressants to alleviate chronic pain, narcotic pain relievers, and non-narcotic pain relievers. At the time of trial, Putnam continued to take ibuprofen, a prescription muscle relaxer, and a prescription migraine medication.

At the jury trial in June 2015, Putnam testified that he did not suffer from headaches or neck or back pain prior to the accident, other than headaches related to illnesses. He testified that, following the accident, he experienced constant headaches and occasional migraines, as well as upper and lower back pain, neck pain and limited range of motion in the neck, and shooting pain down the right leg. Putnam continued to suffer from these symptoms at the time of trial.

Putnam also believed that his symptoms resulting from the accident had contributed to his departure from the company in Omaha where he was employed as a district manager at the time of the accident. He explained that he had lost his job during a "workforce reduction" when the company was consolidating two offices. Someone else had been selected to lead the new office, and Putnam believed his irritableness, loss of focus, and other symptoms following the accident contributed to him not being selected.

Three of Putnam's medical providers testified at trial. Dr. Vinton testified that he saw Putnam approximately 32 times in the first two years following the accident, and approximately 5 or 6 times per year after that. Generally, Dr. Vinton summarized Putnam's complaints and treatment, including the referrals for physical therapy, chiropractic treatment, pain management, and neurological evaluation. Dr. Vinton also described his findings on physical examination of Putnam, which included limited range of motion, muscle spasm, and tenderness. Dr. Vinton expressed his opinion that Putnam's headaches and neck and back pain were precipitated by the car accident. His final diagnosis was "persistent neck pain due to whiplash injury and migraine headaches and low back pain, chronic."

Dr. Godfrey also testified regarding his examination and treatment of Putnam. Dr. Godfrey testified that Putnam complained of neck and back pain and headaches. Upon examination of Putnam, Dr. Godfrey observed tenderness, muscle tightness, muscle spasm, and "very limited" range of motion of the neck and lower back. Dr. Godfrey believed the car accident was the cause of Putnam's musculoskeletal symptoms.

Sanford testified regarding his history of administering pain blocking injections to Putnam's head, neck, and back. The injections were administered to certain nerves and to "trigger points," which were areas where Putnam was tender to pain. Sanford testified that it was "reasonable to say" that the car accident caused Putnam's symptoms of pain and headaches.

PROCEDURAL BACKGROUND

Putnam filed his complaint against the Scherbrings in April 2012. The Scherbrings admitted that Keri's negligence caused the accident but denied the remaining allegations, including that the collision proximately caused Putnam's injuries.

In May 2012, the Scherbrings served written interrogatories and requests for production on Putnam requesting, in pertinent part, all bills or statements of account, including the amounts and dates of said bills or statements of account, which he alleged were incurred as a result of the accident. One of the interrogatories also requested Putnam to identify each expert witness he

intended to call at trial, including the subject matter of each expert's testimony, the substance of the facts and opinions to which each expert was expected to testify, and the facts or assumptions relied on by each expert for each opinion.

In Putnam's responses to the written interrogatories dated May 31, 2012, he identified the expert witnesses he intended to call as "[a]ll of the medical persons and chiropractors named herein," but he did not disclose the subject matter of each expert's testimony, or any other information. (All of Putnam's medical providers discussed above, except Sanford, were identified in the interrogatory responses.) In response to the interrogatory requesting bills or statements of accounts alleged to have resulted from the accident, Putnam listed the hospital, physicians' offices, and physical therapy locations where he received treatment, but there is no indication that he disclosed the amounts or dates of any medical bills at that time.

On October 1, 2013, the district court dismissed Putnam's action for lack of prosecution because Putnam had failed to submit a "Proposed Scheduling Order" pursuant to the court's local rules. See Rules of Dist. Ct. of Fourth Jud. Dist. 4-10 (rev. 2010). Shortly thereafter, the case was reinstated on Putnam's motion. At that time, the court approved a proposed scheduling order signed by counsel for both sides, which required Putnam to disclose his expert witnesses and the subject matter of each expert's testimony by January 15, 2014. The order further required the parties to complete fact discovery by March 31 and all discovery related to expert witnesses by April 15. After approving the order, the court scheduled trial for July 23.

On February 6, 2014, after the deadline for disclosing his expert witnesses had passed, Putnam filed an expert witness list identifying five experts: Dr. Vinton, Dr. Ghosh, Dr. Godfrey, Dr. Liebentritt, and Todd Suey, a physical therapist. The list did not disclose the subject matter of each expert's testimony. Shortly after receiving the list, defense counsel sent a letter to Putnam's counsel indicating that the omission of the experts' opinions made compliance with the scheduling order "impossible." Defense counsel suggested that a new scheduling order be obtained.

On February 19, 2014, Putnam filed a motion for a new scheduling order and to continue trial. Subsequently, the court approved a new scheduling order, requiring Putnam to disclose the subject matter of each expert's testimony by April 14. The order also directed the parties to complete all discovery by September 15. The court continued trial to December 17.

The record discloses that, by at least August 28, 2014, defense counsel had in his possession reports from Dr. Godfrey, Dr. Vinton, Dr. Ghosh, and Dr. Liebentritt. Generally, the reports briefly summarized each provider's treatment of Putnam arising out of the car accident. Dr. Vinton opined in his report that Putnam's headaches and neck and back pain were caused by the accident. However, none of the reports contained an opinion that Putnam's medical expenses were reasonable and necessary.

On November 21, 2014, approximately two months after the close of discovery, Putnam's counsel filed a motion to continue trial, because he had undergone surgeries to replace a heart valve and install a pacemaker on November 12 and 15. His expected recovery time was three months. Counsel indicated that prior to undergoing surgery, he had attempted to locate an attorney to assist with Putnam's case but had been unsuccessful. The court granted the motion and continued trial to February 18, 2015.

On January 9, 2015, Putnam's counsel filed another motion to continue trial. He alleged that following his heart surgery he had located an attorney who was willing to serve as lead counsel in Putnam's case. However, the new counsel had fractured his ankle on January 4 and would not be ready for trial by the scheduled date. Putnam's original counsel informed the court in an affidavit that he first sought medical attention for his heart condition in early 2014 and was prescribed medication that "slowed [him] down both physically and mentally," causing him to become fatigued when walking as little as 100 yards. It was only later determined that he needed surgery. Counsel indicated that due to his physical condition during 2014, he had been "unable to properly prepare for trial." Putnam's new lead counsel indicated in an affidavit that the recovery time for his fractured ankle was eight weeks, and he also stated that limited additional discovery may be needed.

On January 23, 2015, the court granted the motion and continued trial to June 24. In the same order, the court granted Putnam leave to substitute one of his expert witnesses, which was necessary because counsel had discovered that Dr. Ghosh had retired and that Putnam had received most of his pain management treatments from Sanford. Otherwise, the court did not reopen discovery.

On February 18, 2015, Putnam filed a motion to reopen discovery so that, among other things, he could serve requests for admission on the defense regarding whether Putnam's medical expenses were reasonable and necessary. On March 26, Putnam filed a supplemental motion in which he also sought leave to disclose additional expert witnesses, consisting of two medical providers to whom Putnam had been referred for evaluation of a possible traumatic brain injury resulting from the collision.

Following a hearing on March 30, 2015, the district court denied Putnam's requests to reopen discovery. The court reasoned that trial had been continued four times at Putnam's request and the scheduling order had been amended once. The court further noted that the case had been pending since April 2012 and concluded that "we're past the point of any further continuances . . . or amendments or changes to the discovery deadlines."

The record reflects that at some point between March 30 and June 2, 2015, Putnam's counsel turned over to defense counsel supplemental expert witness reports from Dr. Vinton, Dr. Godfrey, and Sanford. In Dr. Vinton's supplemental report, which was dated March 30, the doctor summarized Putnam's medical treatment arising out of the accident and, for the first time, expressed an opinion that the expenses Putnam incurred for his treatment were reasonable. Before the district court, the Scherbrings' counsel initially stated that he received Dr. Vinton's supplemental report "a month or two" before trial, and later stated that he received it in "late April of 2015," which would have been two months before trial. However, on appeal, defense counsel acknowledges receiving Dr. Vinton's supplemental report on March 30, which was three months before trial. While these dates are less than certain, we will assume for purposes of this appeal that defense counsel received Dr. Vinton's supplemental report somewhere between two and three months prior to trial.

On June 5, 2015, defense counsel filed amended motions in limine seeking, in pertinent part, to exclude from evidence any expert opinions and any medical bills disclosed after the close of discovery on September 15, 2014, including Dr. Vinton's opinion as to the reasonableness of

Putnam's medical bills. Also in the motion in limine, the Scherbrings sought to exclude the testimony of Sharon Briggs, a former coworker of Putnam's who was not disclosed as a witness until after the close of discovery.

The record reflects that a pretrial conference was held on June 11, 2015; a pretrial order was entered on June 12. It appears that the motion in limine may have been discussed at that time, since on the morning of trial, June 24, the court indicated that "when we were here last," it had sustained the amended motion in limine in all but one aspect of the motion, which is not pertinent to this appeal. The court then wanted to clarify one of the issues raised in the motion in limine--whether Dr. Vinton could testify to his opinion that Putnam's medical bills were reasonable and necessary. Defense counsel reiterated that Putnam had not disclosed this opinion until months after the close of discovery. Putnam's counsel responded that the medical bills had been disclosed for "a long, long time" and suggested that defense counsel could not claim surprise regarding an opinion that the bills were reasonable and necessary, because this type of opinion was "pretty much of a standard thing." Putnam's counsel further argued that, as a matter of fairness, Putnam should be permitted to introduce his medical bills.

After an extended colloquy with both attorneys regarding the issue, the court ruled that Dr. Vinton could testify to the reasonableness and necessity of any bills for services that Dr. Vinton provided to Putnam prior to Dr. Vinton's deposition on August 20, 2014. The court's reasoning seemed to be that, although the reasonableness of Dr. Vinton's bills was not addressed during the deposition, defense counsel had the opportunity to explore that issue during the deposition.

Putnam's counsel informed the court that Dr. Vinton's charges for services prior to his deposition were only "a couple hundred bucks" and that the real issue was the bills from other providers, which the record reflects totaled over $100,000. The court explained that attorneys usually resolved the issue of the reasonableness of medical bills through a stipulation and stated:

> You know, again, I'm sorry that that issue wasn't resolved by counsel, but I don't think it's -- the Court can or should force the issue. I can't -- that's not -- I don't go there. I don't think a court should. Then I'm getting involved in something that's kind of a non-evidentiary issue. It's just something you take up before trial.

The court reiterated that just because a stipulation "hasn't happened," it was not going to "force the issue."

At trial, Putnam's counsel offered exhibit No. 17, which was 147 pages of Putnam's medical bills from various providers dating from December 23, 2008, to April 2, 2015. Defense counsel objected on the basis of the motion in limine, as well as foundation, relevance, and hearsay. The court sustained the objection and excluded the exhibit from evidence. Putnam's counsel also made an offer of proof during which Dr. Vinton testified that he had reviewed a summary of Putnam's medical expenses contained in exhibit No. 81 (which was not received into evidence and which appears to be a summary of the bills contained in exhibit No. 17) and had formed an opinion that the expenses were reasonable and necessary. The listed expenses totaled $106,751.34.

At the close of Putnam's case-in-chief, Putnam's counsel moved for a directed verdict on the issue of "liability," including "proximate cause." He argued that the evidence was "uncontroverted" that Putnam had experienced neck and back pain "from day one." He argued that

the only issue that should be submitted to the jury was the nature and extent of his injuries. The district court denied the motion, reasoning that although the Scherbrings had conceded liability for the accident, it was "a jury question and a credibility issue" whether "the accident was the proximate cause of any damages."

Because Putnam had not presented any evidence of medical expenses, the court excluded any reference to past and future medical expenses in the jury instruction on damages. (Putnam's counsel made comments suggesting that because Dr. Vinton's bills constituted only a small fraction of the total medical bills, counsel had made a strategic decision not to offer Dr. Vinton's bills in light of the exclusion of all of the other bills.)

The jury returned a verdict in favor of the Scherbrings, and Putnam timely appealed.

## ASSIGNMENTS OF ERROR

Putnam assigns, restated, that the district court erred in (1) excluding Putnam's medical bills from evidence; (2) excluding Dr. Vinton's expert opinion that Putnam's medical bills were reasonable and necessary; (3) excluding Briggs' testimony; and (4) denying Putnam's motion for a directed verdict.

## STANDARD OF REVIEW

The determination of an appropriate discovery sanction rests within the discretion of the trial court, and an appellate court will not disturb it absent an abuse of discretion. *Hill v. Tevogt*, 293 Neb. 429, 879 N.W.2d 369 (2016). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is, when an issue should be decided as a matter of law. *Credit Bureau Servs. v. Experian Info. Solutions*, 285 Neb. 526, 828 N.W.2d 147 (2013).

## ANALYSIS

*Exclusion of Medical Bills and Related Expert Testimony.*

Putnam's first two assignments of error are that the district court erred in excluding his medical bills and in excluding Dr. Vinton's opinion testimony that the bills were reasonable and necessary. Although Putnam argues these assigned errors separately, we address them together.

Putnam argues that excluding his medical bills and Dr. Vinton's opinion testimony based on a discovery cut-off date nine months before trial was arbitrary and unjust. He maintains that the bills and opinion testimony were disclosed more than two months before trial and that the defense could not have been prejudiced by their admission at trial. Putnam further argues that he turned over Dr. Vinton's supplemental report, which contained the opinion as to reasonableness, pursuant to his duty to supplement his discovery responses. Putnam describes the court's exclusion of the bills and opinion testimony as an "extreme sanction." Brief for appellant at 16.

The Scherbrings respond that because Putnam disclosed the medical bills and Dr. Vinton's opinion testimony several months after the close of discovery, the court did not abuse its discretion when it excluded the evidence.

As an initial matter, we note that the record is not clear as to when defense counsel first came into possession of Putnam's medical bills. The record reflects that, at least with respect to Dr. Godfrey, the chiropractor provided defense counsel with a list of all of the charges for Putnam's chiropractic treatments in response to a subpoena in June 2012. The record does not disclose whether defense counsel subpoenaed medical bills from Putnam's other medical providers. However, it does disclose that on June 24, 2014, the defense's retained expert, Bernard L. Kratochvil, M.D., authored a report indicating that he had reviewed medical records from all of Putnam's medical providers. Dr. Kratochvil's report also contained the following opinion: "Any medical bills due after January 16, 2009 are not related to the accident."

Given these documents, we know that defense counsel had Putnam's medical records in his possession prior to the close of discovery, and also had at least some of Putnam's medical bills prior to that time. However, we will assume for purposes of this appeal that Putnam's medical bills in their entirety were not turned over until after discovery closed. We do this in part because Putnam states that the 147 pages of bills contained in exhibit No. 17 were given to defense counsel "after the close of discovery" but still "several months to several weeks before trial." Brief for appellant at 12.

We now turn to the issue of whether the district court abused its discretion in excluding all but a small fraction of Putnam's medical bills, and in excluding Dr. Vinton's opinion testimony that the bills were reasonable and necessary.

On the morning of trial, when the district court took up the issue of whether Dr. Vinton would be permitted to testify to his opinion that the bills were reasonable and necessary, there were significant differences of opinion, as well as some confusion, as to how to resolve the issue. A common theme throughout the discussion was the recognition that the issue of the reasonableness of the bills was usually something parties resolved through a stipulation. The district court said that this was "kind of a non-evidentiary issue" that was "just something you take up before trial." The court stated that, while no stipulation had been reached, it was not going to "force the issue." It then stated, "I don't go there. I don't think a court should." Furthermore, while there was a recognition that the parties had not entered into a stipulation, there was little focus on whether admitting the bills, or Dr. Vinton's testimony that the bills were reasonable and necessary, would have unfairly surprised the defense.

Setting aside for a moment the propriety of the court's reasoning, we construe the court's decision to exclude the medical bills and Dr. Vinton's opinion testimony as a discovery sanction, given that the impetus for the court's decision was Putnam's failure to disclose these items prior to the close of discovery. Although Putnam identified Dr. Vinton as an expert witness as early as May 31, 2012, he did not disclose Dr. Vinton's March 30, 2015, opinion as to the reasonableness of Putnam's medical bills until between late March and late April 2015, more than six months after discovery closed and two to three months before trial. (As noted previously, on appeal, defense counsel acknowledged receiving Dr. Vinton's supplemental report on March 30, which was three months before trial.) Furthermore, it was not until Dr. Vinton's offer of proof at trial that he

testified to his opinion that Putnam's medical expenses were necessary, although we note that the same March 30 letter in which Dr. Vinton stated the medical charges were reasonable, he also asserted that all of Putnam's medical problems discussed in his report were not present prior to the December 17, 2008, motor vehicle accident, and all were proximately related to that accident. Dr. Vinton's opinions as to these matters should have been disclosed in response to the Scherbrings' interrogatory requesting expert witness disclosures pursuant to Neb. Ct. R. Disc. § 6-326(b)(4)(A)(i) (Reissue 2008). Likewise, Putnam should have turned over his medical bills during discovery. While Putnam argues that he was simply supplementing his discovery responses pursuant to § 6-326(e) when he disclosed Dr. Vinton's supplemental report, we note that nothing prevented Putnam from supplementing his expert witness disclosures prior to the close of discovery.

We now return to the issue of the propriety of the court's reasoning for excluding the medical bills and Dr. Vinton's opinion testimony as a discovery sanction. Although Putnam's failure to timely disclose these items during discovery cannot be condoned, we nevertheless have determined that the district court abused its discretion in excluding them from evidence as a discovery sanction. While the court clearly was aware of and took into consideration the fact that Putnam had failed to timely comply with discovery, the court focused on the absence of a stipulation regarding the medical bills, and stated that it would not "force the issue" or "go there." These comments suggest that the court did not appropriately exercise its discretion by weighing all of the relevant factors for deciding whether to impose a discovery sanction. As we explain, the relevant factors for determining whether to exclude testimony of an expert witness called by a party who has failed to comply with a request for discovery are set forth in *Norquay v. Union Pacific Railroad*, 225 Neb. 527, 407 N.W.2d 146 (1987). The factors are similar to those relevant to imposing any discovery sanction, as set forth in *Hill v. Tevogt*, 293 Neb. 429, 879 N.W.2d 369 (2016).

Because Dr. Vinton's opinion testimony was necessary to provide foundation for admission of Putnam's medical bills, we first review the court's decision to exclude Dr. Vinton's opinion testimony using the factors from *Norquay v. Union Pacific Railroad, supra*. In *Norquay*, the Nebraska Supreme Court recognized that when a party fails to comply with a request for discovery concerning an expert witness, preclusion of the expert witness' testimony may be an appropriate sanction pursuant to Neb. Ct. R. Disc. § 6-337(d) (rev. 2008). The court held that in determining whether to exclude such testimony, the trial court should consider: (1) the explanation, if any, for the party's failure to respond, or respond properly, to a request for discovery concerning an expert witness; (2) the importance of the expert witness' testimony; (3) surprise to the party seeking preclusion of the expert's testimony; (4) needed time to prepare to meet the testimony from the expert; and (5) the possibility of a continuance. *Norquay v. Union Pacific Railroad, supra*.

The first factor set forth in *Norquay* is the party's explanation for the late disclosure. Again, some of the delays occasioned by Putnam's counsel are not to be condoned. However, at least during much of 2014, when the close of discovery was looming, Putnam's original counsel was suffering from a heart condition and taking medication that "slowed [him] down both physically and mentally," causing him to become fatigued when walking as little as 100 yards. In November 2014, counsel underwent heart surgery, with an anticipated recovery time of three months.

Counsel's efforts prior to his surgery to retain counsel to assist with Putnam's case were unsuccessful, but following surgery he retained a new lead counsel. Unfortunately, Putnam's new counsel fractured his ankle on January 4, 2015, and required eight weeks of recovery. On February 18, 2015, finally having a healthy attorney, Putnam filed a motion to reopen discovery, seeking in pertinent part to serve requests for admission on the defense as to whether Putnam's medical expenses were reasonable and necessary. This request was timely made given the medical circumstances impacting both the initial and subsequent attorneys. The court denied this motion on March 30, 2015, even though trial was scheduled for June 24--another three months down the road. Thereafter, sometime between March 30 and late April, Putnam's counsel provided defense counsel with a supplemental report from Dr. Vinton containing, for the first time, an opinion that Putnam's medical expenses were reasonable. At a minimum, these circumstances suggest that the late disclosure was not a willful or bad faith attempt to frustrate the discovery process or to employ a strategy of "tactical surprise." See *Norquay v. Union Pacific Railroad*, 225 Neb. at 536, 407 N.W.2d at 153. The dissent concludes that these circumstances do not excuse Putnam's delay; however, pertinent to our review is the fact that the district court failed to even consider this factor before imposing its sanction. The serious medical condition plaguing Putnam's original counsel for much of 2014 (not just after the close of discovery) and its impact on counsel's ability to give the case sufficient attention before the discovery deadline is a factor that warranted consideration.

The second consideration is the importance of the evidence. This factor requires little discussion, as the importance of Dr. Vinton's testimony is readily apparent. Putnam was unable to recover for any of his medical expenses without presenting evidence to establish that they were reasonable and necessary. See *McDonald v. Miller*, 246 Neb. 144, 518 N.W.2d 80 (1994); *Renne v. Moser*, 241 Neb. 623, 490 N.W.2d 193 (1992). Therefore, not being able to offer Dr. Vinton's testimony that Putnam's medical bills were reasonable and necessary was detrimental to Putnam's case.

The third consideration is the surprise to the party seeking preclusion of the evidence. Although we assume that defense counsel did not receive the entirety of Putnam's medical bills until sometime after the close of discovery, we do not believe that defense counsel could have been surprised by the bills or by Dr. Vinton's opinion that the bills were reasonable and necessary. By at least August 28, 2014, prior to the close of discovery, defense counsel had records from all of Putnam's medical providers, as well as reports from four of Putnam's then-designated experts, Dr. Godfrey, Dr. Vinton, Dr. Ghosh, and Dr. Liebentritt. The reports briefly summarized each provider's treatment of Putnam's injuries from the car accident. Dr. Vinton stated in his report that Putnam continued to suffer headaches and neck and upper back pain and had undergone physical therapy, received steroid injections, and been prescribed various medications. Dr. Vinton specifically opined that Putnam's headaches and neck and back pain were caused by the accident. Dr. Ghosh's report contained a similar opinion.

At a minimum, the information in defense counsel's possession prior to the close of discovery was sufficient to support a reasonable inference that the medical expenses for Putnam's treatments were a proximate result of the accident. See *McDonald v. Miller, supra* (evidence other than medical provider's expert testimony may be sufficient to satisfy requirement that medical expenses be necessary). Indeed, it was the very information that defense counsel provided to his

own expert witness to obtain an opinion as to whether Putnam's expenses were necessary. Although the defense's expert, Dr. Kratochvil, issued a report on June 24, 2014, opining that "[a]ny medical bills due after January 16, 2009, are not related to the accident," the information in the defense's possession at that time also reasonably supported the opposite conclusion--that Putnam's medical expenses were a proximate result of the accident. Furthermore, the defense received Dr. Vinton's supplemental report, containing his opinion that Putnam's medical bills were reasonable and that Putnam's problems were proximately related to the accident, between two and three months before trial, and also received the entirety of Putnam's medical bills around the same period. Considering all of the circumstances, we do not believe the defense could have been surprised had the court admitted Dr. Vinton's opinion testimony at trial.

The dissent states that "we can assume the trial court found an element of surprise in Dr. Vinton's proposed testimony as to the bills from other health care providers." However, *Norquay v. Union Pacific Railroad*, 225 Neb. 527, 407 N.W.2d 146 (1987), states that the trial court should consider whether there has been surprise to the party seeking preclusion of the expert's testimony; the court in this instance failed to address the surprise factor at all. Instead, when discussing the fact that the parties had not stipulated as to whether the medical bills were reasonable and necessary, the court stated it would not "go there[,]" because that would mean "getting involved in something that's kind of a non-evidentiary issue[,]" and that is "something you take up before trial." There is no indication the court ever considered the element of surprise to the defense in making its ruling to exclude Dr. Vinton's testimony on this issue. And given the severity of the sanction, an explanation by the trial court that it did consider this factor, rather than an assumption on this court's part, is favored.

The fourth consideration is the time needed to prepare to meet the evidence. Again, defense counsel had between two and three months after receiving Dr. Vinton's supplemental report before trial was scheduled to begin. Defense counsel also had medical records from all of Putnam's providers, as well as at least some medical bills, prior to the close of discovery. Moreover, well before the close of discovery, defense counsel had obtained an opinion from his own expert as to the necessity of Putnam's medical bills. Had Dr. Vinton's opinion testimony been received into evidence, defense counsel could have called his expert, Dr. Kratochvil, to dispute this evidence.

The fifth and final consideration is the possibility of a continuance. Given that defense counsel had already retained an expert opinion that any bills after January 16, 2009, were not related to the accident, a continuance likely was unnecessary.

In sum, applying the relevant factors from *Norquay v. Union Pacific Railroad, supra*, to the circumstances of this case, we conclude that the district court abused its discretion by not considering the *Norquay* factors at all, and in excluding from evidence, as a discovery sanction, Dr. Vinton's opinion testimony that Putnam's medical bills were reasonable and necessary. We see nothing in the record to support any kind of willful or bad faith attempt by Putnam's counsel to frustrate the discovery process or to employ a strategy of "tactical surprise." See *Norquay v. Union Pacific Railroad, supra.* Rather, Putnam's original counsel had to contend with a serious medical condition from early 2014 through his heart surgery in November 2014, and recovery thereafter. In the midst of this, trial in this case was scheduled for July 2014. Defense counsel and the court did accommodate continuances of trial to December 2014, then February 2015, and

finally June 2015. The timeframe for the continuances are all close in time to counsel's ongoing treatment of his serious medical condition and surgery. This was not a situation where dilatory or manipulative behavior caused delays in getting to trial; rather, this was an unfortunate and rare circumstance for which consideration and discussion of the *Norquay* factors should have formed the basis for the district court's ultimate decision.

We now turn to the court's decision to exclude Putnam's medical bills as a discovery sanction. Again, the factors set forth in *Norquay* for excluding expert testimony as a discovery sanction are similar to the factors relevant to imposing any discovery sanction. When imposing a discovery sanction, a court should consider: (1) the prejudice or unfair surprise suffered by the party seeking sanctions, (2) the importance of the evidence which is the root of the misconduct, (3) whether the court warned the sanctioned party about the consequences of its misconduct, (4) whether the court considered less drastic sanctions, (5) the sanctioned party's history of discovery abuse, and (6) whether the sanctioned party acted willfully or in bad faith. *Hill v. Tevogt*, 293 Neb. 429, 879 N.W.2d 369 (2016).

Applying these factors to this case, we conclude that the district court abused its discretion by not considering these factors and in excluding Putnam's medical bills from evidence. We reach this conclusion for many of the same reasons discussed above related to the exclusion of Dr. Vinton's opinion testimony, which reasons we need not repeat in detail here. In sum, the key considerations under the factors from *Hill v. Tevogt, supra*, are that the defense would not have been prejudiced or unfairly surprised had the medical bills been received into evidence; the medical bills were critical to Putnam's case; and there is nothing to indicate that Putnam or his attorneys acted willfully or in bad faith in making their late discovery disclosures. Although Putnam's counsel's delays in discovery cannot be condoned, such conduct did not warrant the drastic sanction of excluding all but a small fraction of Putnam's medical bills. As previously discussed, counsel's delays were in large part a result of serious medical issues and, given the importance of the evidence and the lack of unfair surprise to the defense, such a harsh sanction was not warranted.

We note that the Scherbrings argue that we could affirm the court's decision to exclude the medical bills based on hearsay. However, we decline to do so. The district court excluded the medical bills as a discovery sanction and did not otherwise address the admissibility of the bills. Although we reverse the court's decision to exclude the medical bills and Dr. Vinton's opinion testimony as a discovery sanction, on remand the Scherbrings are free to object to the admission of these items on any other evidentiary basis.

*Exclusion of Briggs' Testimony.*

Putnam also assigns as error that the district court erred in excluding Briggs' testimony. Again, Briggs was a former coworker of Putnam's who was not disclosed as a witness prior to the close of discovery. During an offer of proof, Briggs testified to changes she observed in Putnam following the accident, including that he appeared to be in pain, had trouble turning his head, and was short-tempered. The Scherbrings acknowledge that Putnam first disclosed Briggs as a witness on March 30, 2015.

The district court excluded Briggs' testimony as part of its decision to grant the Scherbrings' motion in limine to exclude any testimony or evidence disclosed after the close of

discovery on September 15, 2014. Similar to the decision to exclude Dr. Vinton's opinion testimony and Putnam's medical bills, this was a discovery sanction pursuant to § 6-337(d). The relevant factors for imposing a discovery sanction are those set forth above from *Hill v. Tevogt, supra*.

Based on the record before us, we cannot say that the court abused its discretion in excluding Briggs' testimony. While Putnam's medical bills and Dr. Vinton's opinion testimony were critical to Putnam's case, the same cannot be said about Briggs' testimony. Briggs' testimony merely would have corroborated Putnam's own testimony, as well as testimony from Putnam's medical providers. Given the cumulative nature of Briggs' testimony and her untimely disclosure as a witness, we find no abuse of discretion in excluding her testimony.

*Denial of Motion for Directed Verdict.*

Putnam's final assignment of error is that the court erred in denying his motion for a directed verdict on the issue of "liability," including "proximate cause." He argues that there was "no issue as to [the Scherbrings'] liability" and that "all of the uncontroverted medical testimony showed that [he] had sustained some injury as a result of the accident." Brief for appellant at 31. He contends that the only issue for the jury should have been the nature and extent of his injuries.

"An admission of liability for an accident does not constitute an admission that all damages claimed by the plaintiff, even though undisputed in the record, were the proximate result of the accident." *Cooper v. Hastert*, 175 Neb. 836, 838, 124 N.W.2d 387, 388 (1963). Even when a trial is conducted "on the issue of damages only," the plaintiff has the burden of proving that his or her damages were proximately caused by the accident. *Steele v. Sedlacek*, 267 Neb. 1, 3, 673 N.W.2d 1, 6 (2003). As the district court in this case correctly reasoned when denying Putnam's motion for directed verdict, it was "a jury question and a credibility issue" whether "the accident was the proximate cause of any damages." The evidence on this issue was not undisputed and did not support only one conclusion, especially given Putnam's inability to present evidence of his medical bills. Therefore, we affirm the court's denial of the motion for directed verdict.

CONCLUSION

For the foregoing reasons, we conclude that the district court abused its discretion in excluding, as a discovery sanction, Putnam's medical bills and Dr. Vinton's opinion testimony that the bills were reasonable and necessary, and therefore we reverse the judgment in favor of the Scherbrings and remand for a new trial. However, we affirm the court's decisions excluding Briggs' testimony and denying Putnam's motion for a directed verdict.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED FOR A NEW TRIAL.

RIEDMANN, Judge, dissenting.

Considering our standard of review, the multiple requests for discovery extensions, and the number of years this case languished in the court system, I respectfully dissent from the majority's opinion that the trial court abused its discretion in granting the Scherbrings' motion in limine to exclude evidence that was not timely disclosed.

The majority correctly states that the determination of an appropriate discovery sanction rests within the discretion of the trial court and an appellate court will not disturb it absent an abuse of discretion. *Hill v. Tevogt*, 293 Neb. 429, 879 N.W.2d 369 (2016). For an abuse of discretion to exist, the ruling of the trial judge must be clearly untenable, unfairly depriving a litigant of a substantial right and denying just results. *Id*. Giving meaning to the words *clearly* untenable and *unfairly* depriving, I cannot find an abuse of discretion because of the repeated failure to timely disclose the expert opinion at issue despite accommodations by both opposing counsel and the court.

The accident giving rise to this case occurred in December 2008; the lawsuit was filed in April 2012. After the case had been reinstated following a dismissal for lack of prosecution, the court entered a scheduling order proposed by the parties which included an expert disclosure deadline for Putnam of April 14, 2014; a final expert discovery deadline of September 15, 2014; and a trial date of December 17, 2014. At Putnam's request, trial was continued two more times, with an ultimate trial date of June 24, 2015.

During the course of discovery, both opposing counsel and the court worked with Putnam's original counsel to extend discovery deadlines. When Putnam's attorney experienced a medical condition in November 2014 that necessitated hiring new lead counsel, trial was continued from December 17, 2014 to February 18, 2015. When new counsel fractured his ankle, trial was again continued to June 24, 2015.

After new lead counsel was hired in January 2015, he recognized some deficiencies in the discovery that had been completed and sought to reopen discovery. At a hearing on Putnam's motion to reopen discovery held on March 30 (6 months after discovery was closed), Putnam requested permission to add three new medical experts. At the hearing, Putnam revealed for the first time that a previously disclosed expert, Dr. Thomas Vinton, would opine that Putnam suffered from a brain injury as a result of the 2008 accident. The trial court denied the motion to reopen discovery.

Sometime subsequent to the hearing, Scherbrings received a supplemental report from Dr. Vinton dated March 30, 2015. In this supplemental report, Dr. Vinton opined for the first time that Putnam's medical bills, including those from other health care providers, were fair and reasonable. It is uncertain from the record when that report was furnished to the Scherbrings.

These supplemental opinions served as the impetus of Scherbrings' motion in limine that is the subject of this appeal. The Scherbrings filed their motion on June 5, 2015 and sought to exclude evidence relating to medical opinions not timely disclosed. Among other evidence, the Scherbrings sought to exclude opinions from Dr. Vinton that were not disclosed in his August 2013 report or during his deposition of August 2014. Our record does not contain a transcription of the hearing on the motion in limine, but based upon comments made during trial, it is evident that the court sustained portions of the motion in limine, including the exclusion of any expert opinion disclosed after the September 15, 2014 discovery deadline.

The morning of trial, the Scherbrings' attorney asked the court to clarify the scope of the court's ruling on the motion in limine. Specifically he sought a ruling that Dr. Vinton would not be allowed to testify that the medical bills were fair and reasonable. The court noted the peculiarity of the situation, pointing out that typically the parties stipulate before trial that the medical bills

are fair and reasonable. Because there was no such stipulation, and at the insistence of Scherbrings' counsel that there was no prior disclosed expert opinion on the issue, the court ruled that Dr. Vinton would be allowed to testify only as to his own bills up through the date of his deposition, but would not be allowed to opine on the remainder of the bills. The basis for the exception for Dr. Vinton's pre-deposition bills was the absence of "surprise or unfairness" as to such testimony.

Consistent with the court's pretrial rulings, the court sustained a trial objection to Dr. Vinton's testimony and the offer of Putnam's medical bills. Because Putnam's attorney chose not to offer Dr. Vinton's pre-deposition bills into evidence, the jury was not instructed on damages related to medical expenses and returned a verdict in favor of the Scherbrings.

On appeal and pertinent to this dissent, Putnam assigned as error the exclusion of both the medical bills and Dr. Vinton's opinion as to their fairness and reasonableness. He does not assign error to the denial of his motion to reopen discovery. Therefore, the question on appeal is whether the district court erred in excluding this evidence that was not timely disclosed.

The majority questions the "propriety of the court's reasoning" when referring to the colloquy that occurred before trial during which the court commented that the issue of the fairness and reasonableness of medical bills is usually something the parties resolve through a stipulation prior to trial. I read this portion of the record as simply the court's observation that parties typically stipulate to this issue before trial and do not seek an evidentiary ruling. Because the parties in this case did not so stipulate and Scherbrings' counsel sought a ruling, the fairness and reasonableness of the bills was the subject of expert testimony, which Putnam failed to timely disclose.

The majority concedes that Putnam did not disclose Dr. Vinton's opinion as to the fairness and reasonableness of the bills until more than 6 months after discovery closed and that he did not disclose the opinion that the bills were necessary until his offer of proof at trial. The majority also admits that these opinions "should have been disclosed in response to the Scherbrings' interrogatory requesting expert witness disclosures pursuant to Neb. Ct. R. Disc. § 6-326(b)(4)(A)(i) (Reissue 2008)." Relying upon the factors enunciated in *Norquay v. Union Pacific Railroad*, 225 Neb. 527, 407 N.W.2d 146 (1987), however, the majority determines the court abused its discretion in excluding the evidence. Relying upon these same factors and mindful of the court's discretion, I disagree.

When imposing discovery sanctions, the factors the trial court should consider are: (1) the explanation, if any, for the party's failure to respond, or respond properly, to a request for discovery concerning an expert witness; (2) the importance of the expert witness' testimony; (3) surprise to the party seeking preclusion of the expert's testimony; (4) needed time to prepare to meet the testimony from the expert; and (5) the possibility of a continuance. *Norquay v. Union Pacific Railroad, supra*.

Turning to the first consideration, the party's explanation for failure to respond, Putnam provided no reason. Even the majority admits Putnam should have provided this information in response to Scherbrings' interrogatories which were served in May 2012. The majority relies upon the medical issues that both initial and substitute counsel experienced as a basis to excuse the delay; however, Putnam's initial counsel filed an affidavit on November 21, 2014 (two months after the discovery deadline) in which he states that he met with his cardiologist "during October 2014" because of irregular heartbeats he was experiencing. He does not state that these irregular

heartbeats affected his ability to work. In a later affidavit offered at a January 15, 2015 hearing, he states "[d]uring the early part of 2014" he sought medical attention for a "rapid heartbeat" and was subsequently prescribed a medication that slowed him down both physically and mentally. He does not identify in that affidavit the date on which the medication was prescribed, but even assuming it was in early 2014, the interrogatories were served over a year and a half prior. Putnam's replacement counsel fractured his ankle in January 2015, four months after the discovery deadline, at which time he became incapacitated. The case was filed in April 2012. Dr. Vinton was identified as an expert as early as May 31, 2012, but no opinion as to the fairness and reasonableness of the medical bills was offered during the nearly two years between his disclosure and initial trial counsel's first medical incident. Therefore, under the first factor, Putnam's delay is not excused.

The majority concludes that "[t]he serious medical condition plaguing Putnam's original counsel for much of 2014 (not just after the close of discovery) and its impact on counsel's ability to give the case sufficient attention before the discovery deadline is a factor that warranted consideration." However, initial counsel admits in his January 2015 affidavit that it was not until mid-October 2014 that he became "substantially incapacitated." And I take issue with the majority's inference that the trial court did not take the attorneys' medical conditions into consideration. In an exchange with Putnam's trial counsel, the court acknowledged the medical issues Putnam's attorneys experienced, explaining its ruling by stating:

> So I know that it's a hard issue for you to accept, and I understand that, but it's just the entire history. I really tried to balance things here, and I'm sensitive to the health issues of [initial counsel] and then the one that you had, unfortunately, but - but they had already taken the time and expense to take the doctor's deposition and prepare, and so it had reached that point.

The trial court was in the best position to determine whether Putnam's late disclosure was excusable and found that it was not; I agree.

The second consideration is the importance of the evidence. I agree with the majority that the importance of Dr. Vinton's testimony is readily apparent, and therefore all the more reason to exclude it for being untimely. See *Paulk v. Central Lab. Assocs.*, 262 Neb. 838 636 N.W.2d 170 (2001) (finding error in denying motion for mistrial for untimely disclosure of evidence stating "[t]he critical importance of the evidence intensified the unfairness occasioned by the failure to disclose it during discovery").

As to the third consideration, surprise to the party seeking preclusion of the evidence, I believe the focus is not on whether Scherbrings were surprised by the bills, but rather whether they should have expected *Dr. Vinton* to testify as to their fairness, reasonableness, and necessity when he was not the physician rendering the treatment. While a treating physician may testify to the necessity of another health care provider's medical bills to whom his patient was referred (see *Gittins v. Scholl*, 258 Neb. 18, 601 N.W.2d 765 (1999)), I differ with the majority's statement that "we do not believe that defense counsel could have been surprised by the bills or by Dr. Vinton's opinion that the bills were reasonable and necessary." The lack of surprise as to Dr. Vinton's opinion as to his own bills was the court's basis in allowing that limited opinion. It rejected Scherbrings' request to exclude that testimony stating "I don't see the -- if you will, the surprise

or unfairness to allowing Dr. Vinton to testify about the fairness and reasonableness and necessity of his bills as of the date you took his deposition." Therefore, we can assume the trial court found an element of surprise in Dr. Vinton's proposed testimony as to the bills from other health care providers. The fact that Putnam disclosed this proposed opinion two to three months before trial should not negate its untimely disclosure.

The fourth consideration is the time needed to prepare to meet the evidence. The Scherbrings had retained their own medical expert to testify that treatment after January 16, 2009 was not related to the accident; however, the record does not contain evidence that this expert could address whether the bills were fair or reasonable.

The final consideration is the possibility of a continuance. In light of the fact that trial had already been continued multiple times and that the case had been on file for more than three years, case progression standards promulgated by the Nebraska Supreme Court weighed against another continuance. Neb. Ct. R. 6-101 (setting 90 percent of district court jury trial to be disposed of within one year). The trial court explained its position, stating:

> There have been four continuances I think all at the request of the plaintiff. So I think - and this is probably the oldest case I have. And so it reached I think the point after four resetting of trial dates, and that - I'm very comfortable with that and the combination - and I think, frankly, defendants' counsel was accommodating the plaintiff's counsel throughout the years on this issue of his health, but we have - we did finally reach a point.

It is clear to me that the court thoughtfully considered its ruling. The bill of exceptions contains 21 pages of discussion on the issue that occurred the morning of trial and at least another 12 pages that occurred during trial, not to mention whatever discussion occurred at the actual hearing on the motion in limine, a transcription of which is not included in our record. An appropriate sanction under Rule 37 is determined in the factual context of a particular case and is initially left to the sound discretion of the trial court, whose ruling on a request for sanction or a sanction imposed will be upheld in the absence of an abuse of discretion. *Norquay v. Union Pacific Railroad*, *supra*. Given the factual context of this case in that Scherbrings initially requested expert opinions in May 2012, Putnam was prompted several times by opposing counsel and granted discovery extensions by the court, and still did not disclose the opinion at issue until late March or early April 2015, I find no abuse of discretion in the granting of Scherbrings' motion in limine excluding Dr. Vinton's opinion. Without expert testimony regarding medical expenses, the bills themselves were inadmissible.

Additionally, I would note that a district court's inherit powers also include the broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial. *Schindler v. Walker*, 7 Neb. App. 300, 582 N.W.2d 369 (1998). And even when a trial court's exclusion of evidence may not be sustained as a Rule 37 sanction, it may be sustained as an exercise of a court's inherent powers. *Id*. "When rules alone do not provide courts with sufficient authority to protect their integrity and prevent abuses of the judicial process, the inherent power fills the gap." *Id*. at 311, 582 N.W.2d at 377. I am reluctant to find an abuse of discretion when a trial court has provided every opportunity for a party to comply with the discovery rules by granting discovery extensions and trial continuances. I would therefore affirm.